Thank you. May it please the court and good morning. This is an appeal from a Rule 12b6 dismissal, a ruling subject to de novo review by this court. At the heart of the district court's ruling was its conclusion that plaintiffs cannot recover under the Defend Trade Secrets Act or RICO because the defendants first obtained and then extinguished plaintiff's trade secrets by when the DTSA was enacted and theft of trade secrets became a RICO predicate act. The district court erred because the defendants are stopped from using their own publication of stolen and misappropriated trade secrets as a defense to their subsequent use, possession, and disclosure of that information. But just a minute, when you say stop by their use, didn't your client consent to that publication? Your honor, our client entered into three agreements. None of, in none of those, and this I'm, I'm going by the complaint which we have to take as true. In none of those agreements did he permit Google or any other defendant to publish those trade secrets without compensation to him. He has never received compensation for those trade secrets which Google internally values as being worth up to 120 billion dollars per year. He's never been paid for that. But certainly that was never. I thought the terms of the assignment agreement said that he was making his assignments for consideration and he was acknowledging that he received that. I'm not, I'm not quoting it exactly, but paraphrasing the documents indicate that he was receiving consideration for the assignment. Why should we disregard that? Two, two points, your honor. There was a temporary license granted for the purpose of, in essence, evaluation of the potential of the trade secret. That was not in some unlimited permission for use. And second, it should be disregarded because the plaintiff has alleged that he was, in essence, deceived into entering these agreements in the first place because the defendant did not intend to compensate him for his trade secrets. Okay, so the first agreement, the first agreement you noted was a non-disclosure act that allowed the parties to share information as part of their negotiations. Is that correct? That is correct, your honor. Okay, and then there was a second agreement in which your client assigned rights in these, in this information and then Google filed for patents. And it appeared from the record that he knew they were going to file for the patents. Is that correct? He did know that that was ultimately one of the objectives, yes, your honor. However, again, he did not consent to any such filing without compensation. Okay, so you're saying he was, you're saying he was deceived. Is there anything, I guess the issue is we have a contracted issue in contract terms. Is there anything ambiguous about those contracts that would take us into parole evidence? Well, your honor, I mean, ultimately there are contracts to be decided, but those contracts were not the basis of the district court's ruling. The district court ruled on standing and it ruled on the elements of RICO. It didn't rule on the basis of contract. Right. I'm sorry. Go ahead. The ruling though was that he didn't have any rights as of May 2016. Those rights had been extinguished by these contracts. And your argument is, as I understand it, is that you agree that the statute said issue or not, the DTSA is not retroactive, but that there were continuing violations beyond that date. And for that to happen, he would have to have rights, uh, on May 2016, which is district court. And that comes from these contracts. We allege that he did in the district, the district court's ruling was not a contract ruling. Um, I mean, um, respectfully, that, that was not, that was not the basis of the ruling. Our defense, we do not, you're correct. We do not contend that DTSA is retroactive. Um, the theft of trade secrets act had been lost since 1996, but it did not become a RICO predicate until the same time that the DTSA was enacted. And so we have argued that estoppel prevents the defendants from relying on their wrongful publication of the trade secrets. That's not retroactivity. Uh, that estoppel is a well established principle. Uh, we have cited cases going back into the eighties, actually into the sixties. Uh, and some of those cases rely on decisions back into the thirties saying that a misappropriator or, or one who has stolen trade secrets cannot in effect, uh, the word, uh, the seventh circuit used was baptized themselves. Uh, excuse me, that was a DC circuit baptized themselves by publishing at which they have wrongfully obtained. And so our part, we are not arguing that somehow the DTSA or theft of trade secrets became effective prior to 2016. We are arguing in response to their defense that they are stopped from asserting that based on their wrongful conduct. Um, that we just simply respectfully disagree with the district court. That's not retroactivity. Retroactivity would be if we were asserting claims that arose prior to 2016, the basis for our recovery is what happened after 2016. Um, the retroactivity analysis by the district court causes a great number of problems. These are very broad statutes. Uh, and it is, it would be perverse to have a situation where in essence, a violation of one subsection of the DTSA would somehow cleanse or absolve another preexisting violation. That doesn't make any sense. Uh, and beyond that, we have the clear circumstance under section 1832, which is the trade secrets act, um, pursuant to which, um, uh, nothing in that statute suggests that a violation of one subsection cancels out a violation of the other. The court was very focused. District court was very focused on misappropriation. That's the initial violation, but these statutes DTSA and faster trade secrets are much broader than merely the misappropriation. That's the initial take. But if you look at 1832, for example, it is very carefully designed to extend beyond that as is the DTSA and they is actually broader than the DTSA because possession is broader than use or possession. Uh, excuse me, use or dissemination. Uh, the... So for that to apply though, I'm sorry to keep focusing on this one point, but for that to apply, your client had to have ownership. He had to have rights, uh, for the somebody else's use of his intellectual property to be wrongful and covered by the statute. And I understood the district court's ruling to be that his rights were extinguished by the assignment. Um, and I know you're saying it's not a contract issue. It's a standing issue, but it's a bit of both because if you're saying that, no, no, no, this con this, this contract he signed doesn't really extinguish his rights, then I think we're going to be looking at California law and interpreting that contract to see if, if there's ambiguity, if we can look at parole evidence, you know, what the terms of this contract mean and where his rights in fact extinguished. Would you, would you agree that if his rights were extinguished by the assignment that he doesn't have claims, uh, for wrongful use or misappropriation? Your Honor, the DTSA, when you look at the definitions under the statute of misappropriation and of, I'm sorry, counsel, I'm just going to interrupt you from him. Can you start with a yes or a no and then give me an explanation? I'm sorry. Your Honor, if, if in fact all of his claims, all of his rights were extinguished, then they would be gone. And, and, and, and, he would not have that claim. I agree. Our point is that they were not, we, we don't agree with that. Um, I mean, I think your, I think your question in effect presents the circumstance where it would be as if he never had it, but he did and the written agreements acknowledge that. Uh, and his point quite clearly in the complaint is that he was deceived, uh, as to what Google's intentions were. And we allege very specific circumstances of deception, including Google going so far as to lie to Mr. Adia and tell him the entire Project Dini had been shut down. When in fact it was being transferred to flux and it was, uh, being continued and augmented. So if they had those rights, there was no need, there was no need to lie to him. Uh, and there was no need to attempt to extinguish. And when you look at improper means under section 1839 of the DTSA, uh, it includes as well as breach of a duty to maintain secrecy, any misrepresentation that's involved. It's basically obtaining the information by any wrongful means. And the complaint is quite clear, clearly alleges that that was what occurred. So you are, um, right at about four minutes. Did you want to reserve the rest of your time? Uh, yes, I would. I apologize. I don't have a clock appearing on my screen, but yes, I would reserve the rest of my time. Thank you. Okay. Thank you. All right. So now we have Mr. Kent, you're going to split time. Um, can you generally, can you see the clock? It should be on screen. Yes, Your Honor, we can. Okay. So keep an eye on that clock. Um, and Mr. Graves, are you going first? Uh, yes, Your Honor. Please proceed. Good morning, Your Honors. This is Charles Graves for the Google Defendants. Robert Kent is also here for the Flux Defendants. We've agreed to split our time. It's five minutes for Mr. Kent. Okay. Hold on just a second. I'm sorry. I'm sorry, Mr. Graves. The clock isn't running, so I need to make sure we get it running. Um, Wayne, can you make sure the clock starts running for Mr. Graves' time? Yes. All right. Thank you. Your Honors, this court has two sensible options for how to proceed. First, whatever happens in the California Court of Appeal on the summary ruling on ownership, the court can simply affirm the district court's thorough opinion. Or second, this court can wait for the California Court of Appeal to rule on the summary judgment. And if the summary judgment is affirmed, this court can affirm because plaintiffs would have no trade secret ownership rights that could support any attempt to bring federal claims. And if the appeal has been taken, right? To the first district? Or fourth district? No, your Honor. Fifth district? Sixth district? Not yet, your Honor. Not yet, your Honor. You can't? You haven't even taken the appeal because it's only an interim ruling. When do you expect trial court proceedings in that case to conclude? So, the first summary judgment was issued last December on the trade secret claim. We've just won the second summary judgment this past Friday. We couldn't say the order because it's still under seal. But on Friday, we won the other part of the case. Does that constitute 100% of the case? No, your Honor. We, Google, still have cross claims. But all of the plaintiff's claims have been resolved against them in the trial court. So, no appeal has yet been taken. My question is, how long is it going to be until you get a final, you know, appealable judgment? Given the timelines that we're seeing in this district, I think it would be a long time. We're happy for the court to dispose of the case now by affirming Judge Freeman's rulings. Turning to the merits, the plaintiffs have alleged in paragraphs 88 that the trade secrets were extinguished. That's their word, through patent publication back in 2012. So, all parties agree that no trade secrets existed after 2012. Now, a former trade secret that used to be valid but lost that status before May of 2016 cannot be the object of a non-retroactive statute that governs, quote unquote, trade secrets after May of 2016, but does not govern former trade secrets. The DTSA covers information that meets a four-part definition of a trade secret. It says that the owner of such a defined trade secret can bring a claim, but it does not purport to create liability for information that ceased to be a trade secret before the statute's May 2016 enactment date. Reading the statute retroactively would violate congressional intent. Now, to be Is this, in effect, your argument as to why estoppel shouldn't apply? Your Honor, a non-retroactive statute cannot be made retroactive by arguing that a defendant acted badly and therefore is disqualified from asserting retroactivity. Now, to be clear, oh, what's your best case? What's your best case that supports that proposition in a factual context like we have here? The statement you made was that something like what? A non-retroactive statute cannot be made retroactive, right? Is that what you said? Yes, the syllogism that we're being offered, Judge, is that if there is bad behavior before a statute is enacted, the badly behaving party cannot point out that a later enacted statute is not retroactive. Let's be clear. Google has never argued that under trade secret law, a party that wrongfully discloses a trade secret would not be liable under the law that exists at the time. Here, that was California state law. If you disclose somebody's trade secret, you are liable for that act under the law in place at the time. But you are permitted to point out that a later enacted statute is not retroactive if someone tries to argue that your act, your previous act, is covered by the later enacted statute. Now, to be clear, under the DTSA, one can misappropriate a still secret trade secret as of May 2016 if it was surreptitiously disclosed between or among bad actors before that date. Because in that circumstance, the information has not yet become generally known, which is how the statute defines trade secrecy. But by contrast, you cannot misappropriate a former trade secret under the statute that was extinguished by patent publication before that date. All of the courts who consider this question agree. That's Judge Freeman. That's the Avago case. That's the Hasbro case in the District of Rhode Island. And as the Federal Circuit put it under California law in the Ultimax case, it's well established that the disclosure of a trade secret in a patent places the information into the public domain. Well, counsel, what considerations did Google provide to the plaintiffs in exchange for the various agreements that he entered, in particular the assignments? Judge Crowan found in his summary judgment order last December. Google obtained ownership's patents through assignments, and Section 3 of the ISA contract grants consideration in the form of a specific patent license back to Mr. Atiyah and his family. But the contract spells out the consideration that was given. There's no dispute that Mr. Atiyah and his family were given the licenses they were promised by Google. So consideration was received, and as the court found in issuing summary judgment, Mr. Atiyah assigned the assignments. He recited correctly that consideration had already been given, and he transferred all right title and interest to Google. So there is no trade secret case in the state court. And because there's a 100% overlap between the trade secret claims in the state case and the federal case, there could never be a federal claim here if the Court of Appeals in the state court affirms that summary judgment, Judge. So the contract spells out the consideration, and there is no dispute that that consideration was given. Why, I'm sorry, why is that consideration valuable? He owned the intellectual property. He's allowing Google to use it and develop it, and he gets a license. So which means he can use it, and he could use it anyway. What benefit did he get? Why is that a valid consideration? It's a great question. So the project had him assign anything he created after the project started, plus the co-inventors, the other people on these patents, Judge, they contributed pieces as well. So what he got was a new set of software related patents based on the work of multiple co-inventors of inventions that the USPTO has agreed with novel that did not exist before. So he got something new and different, and he agreed to that in a contract, and the state court has already found that that occurred on its summary judgment order. Could I interrupt your thinking just to see what your position is? We've had a lot of help from the Northern District of California, which is not unsurprising. They get a lot of these kinds of cases. The same month that the district court in this case made his decision, it was a decision by Judge Edward Chen, whom we all respect as a fine judge. I'd like to have you tell me why Judge Chen is wrong on his analysis, if you believe that he is. Could you help me with that? The distinction, Judge, is the line of cases that involve surreptitious or covert disclosures of a trade secret between wrongdoers before the date the statute is enacted, in which case he can bring a DTSA claim. And on the other hand, patent publication which destroys the trade secret before the statute is enacted. If you still have a valid trade secret as of the day the statute is enacted, then of course you do have a claim. So if a group of wrongdoers disclose a trade secret among themselves, it's still a trade secret on the day that the DTSA is enacted, and the claim still exists. Now, the plaintiffs would like to claim that in both cases, in both surreptitious disclosure and patent publication, trade secrecy is extinguished. The text of the statute rules out that argument in at least three different ways. First, suppose we conclude that Judge Chen was correct in his analysis. What would that do to your case? Nothing, because the surreptitious disclosure of a trade secret between wrongdoers maintains trade secrecy. You still have trade secret rights, so of course you can still bring that claim after May of 2016. Our case is different. It's a public disclosure that by all agreement eliminated trade secret rights back in 2012. That's not a covert disclosure that maintains a trade secret. We can see this difference in the distinction between something that is extinguished before May of 2016 and something that is still a trade secret on the day the DTSA is enacted, but was shared covertly by wrongdoers beforehand. Let me explain. First, information loses trade secret status when it becomes generally known, such as patent publication. But a covert disclosure between wrongdoers before the date does not cause the information to become generally known and lose trade secret status. Two, the DTSA includes liability for a situation where someone wrongfully acquires a trade secret and then discloses that quote-unquote trade secret to another person. In other words, according to the statute, a group of bad actors can disclose a trade secret among themselves covertly without the trade secret owner losing rights against the world. Third, the statute allows a court to issue an injunction to take steps to protect a quote-unquote trade secret. And so if your trade secret falls into the hands of a competitor through an improper disclosure, you still have trade secret rights and you can get an injunction to get it back, which is a very common form of injunction in trade secret law. So we can tell from the text of the statute that Judge Freeman and Judge Chin and all of the other courts looking at these cases are all consistent and correct for the simple reason that a covert or surreptitious disclosure between wrongdoers before the DTSA is enacted does not extinguish trade secret rights. You still get to bring that claim. However, if you were before Judge Chin right now on this case, how would you show that his opinion is consistent with the points you're making now? I would focus on the difference between extinguishment by patent publication and a disclosure among wrongdoers where it's still a trade secret. As I teach my law students in class, Judge, you can pass a trade secret in a group of wrongdoers. They can disclose it to one another, but the owner still has rights. So Judge Chin is correct and the other judges are correct. And when you have a surreptitious disclosure among wrongdoers, you still have trade secret rights and therefore you can still bring a DTSA claim. By major contrast, if the trade secret is published to the world years before, there is no trade secret and therefore the DTSA cannot attach because it only applies to things that are trade secrets on the day that the statute is enacted. So there's no big controversy here at all. All of the retroactivity cases are consistent with one another because there's either a public disclosure that eliminates trade secrecy or you still have trade secret rights because the only disclosure was covert and surreptitious among a group of wrongdoers and you still get a claim for that. So it's a very simple distinction and all of the cases line up consistently with both Judge Chin, Judge Freeman, and all of the others who've been looking at these cases. Judge Chin didn't think it was that easy in his distinction. I'll wait for your adversary to see if he agrees with you. Thank you for that analysis. All right, so Mr. Gretschel, down to just over a minute. Did you want to leave that time for your colleague? Thank you. Thank you, your honors. This is Robert Kent appearing on behalf of the Flux Defendants. I'll try to be brief. I wanted to make just a few brief points that are specific to the Flux Defendants with respect to the estoppel argument that counsel was pressing during his opening speech today. It's uncontested in the briefs that that estoppel does not apply to Flux or the Flux individuals. That appeared in the Google brief. The plaintiffs did not challenge that position in their brief and so we respectfully submit that they've waived estoppel as to Flux and Flux Defendants. But as to the substance of the that the Flux Defendants or Flux itself took any bad acts as part of the patent process. Thank you. Thank you, Mr. Kent. That was very brief. Well done. All right, so back to Mr. Floyd. He's got just a little over four minutes. Mr. Floyd, you still can't see the clock at this point? No, I apologize. I'm afraid I can't, but I'm going to have a colleague sitting next to me let me know when I'm at two minutes and that'll work. So thank you, good thing. I'll let you know when you get to the end as well. So please go ahead. I knew that would happen. Yeah, thank you. First of all, Google never relied on the assignment in moving to dismiss in federal court. None of the party's arguments on the federal claims ever mentioned the contractor assignment. It's only an issue in the state court litigation. And you'll notice that when asked, my brother responded by citing the Superior Court records, not the record in the district court. It is correct that the Superior Court issued an adverse ruling. There is not a final judgment. The average time to disposition in the sixth district court of this case is fully briefed. It is ready for decision. And it does present some novel questions that have not been decided by any other circuit courts. We suggest it's appropriate to proceed. None of the cases cited by Google address the issue of this. None of them are strong. They go through the cases and they like the case, but it's important to realize it was one of the very first cases to address any of these issues. And when you go to the alter G case, which is Judge Chen's case that Judge Wallace was referring to, it notes that it basically said, well, we really don't have anything going the other way. But it was one of the first cases out of the gate. Two years later, by the time alter G was decided, it said courts have generally held that the continued use of a trade secret after the effective date is actionable, even if the secret was initially disclosed prior to May 11, 2016. Precisely the opposite of what Google said at that time. Cases have consistently endorsed just the view that they were considering. Go ahead. Yes, your honor, that's correct. And in essence, what this court is going to have to deal with is a small bucket of district court cases. There is little circuit court guidance on this. But I should point out that you're not only dealing with the DTSA. And Google's response was almost exclusively to the DTSA. It does not address section 1832, which is broader. And 1832 specifically prohibits possessions. And as we have pointed out, if, in fact, these trade secrets are wrongfully acquired, continued possession of them was a post May 11, 2016 violation of the trade secrets statute. It was a RICO predicate act. It supports pattern. It supports relationship. And it supports conspiracy. And the RICO case should proceed. It is not the same as the DTSA case. It's not so extensive. And it provides somewhat different remedies. And it's important that these two things not simply be treated as being of a piece because they are not. Mr. Floyd, you referred just a few minutes ago to Google's continued possession of the trade secrets right after the DTSA came into effect. Well, what about the point Google makes that the patent application with your client's consent and the publication of that, you know, extinguished the trade secret. So there was no trade secret. It could continue to process them. Yes, Judge Wallace, that certainly is their position. And our position is that they are stopped from relying on their own misconduct. I want to be very clear. We do not concede that we consented to that publication. The complaint says to the contrary. And we're going by the complaint here. And so as a consequence, given the procedural posture of this case, while they can deny it and they can controvert it, their denial is not dispositive. We look to the allegation, not the supposed refutation at this stage. And so our point is that in raising estoppel, that distinguishes this case from the district court cases relied upon by our opponents. Because those were not none of them were estoppel cases. And none of them were section 1832 cases. The only thing that they present this. Miss Floyd, have you or your clients or some other attorney taken steps to challenge the patent? Not that I am aware of, Your Honor, but I am not counsel in the state court litigation. There is not a patent challenge in this case before you. And I can't make a representation. Well, why not? Essentially, I think your position seems to be that, you know, it was obtained through, I would say, fraudulent misrepresentations. The trade secret information was, yes, Your Honor. But still, Mr. Atiyah and his corporation haven't challenged the validity of the patent. They don't, they have not done so in this proceeding, Your Honor. Or, you know, or any other proceeding. To my knowledge, no. But again, Your Honor, I want to be quite careful. I am not counsel in the superior court proceeding. And I would not want to make a mistake in representation this court either way. Well, I would think a challenge to the patent would be a federal court proceeding. It would normally, yes, it would normally be in the federal circuit, I believe. Well, thank you. All right, thank you. So we're a bit over time now. Unless Judge Wallace or Judge Tishium has any additional questions, we will submit this case. I'm fine. Thank you. Thank you very much, counsel. And the case is taken under submission. Thank you.
judges: Wallace, Tashima, Bade